IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDITH MUNOZ                          :                    CIVIL ACTION
                                     :
        v.                           :
                                     :
NUTRISYSTEM, INC.                    :                    No. 13-4416

## MEMORANDUM

**L. Felipe Restrepo, J.**                                          **July 30, 2014**

Edith Munoz brought suit against her former employer, Nutrisystem, Inc.

("Nutrisystem"), alleging that Nutrisystem violated the Americans with Disabilities Act (42

U.S.C. § 12101 *et seq.*) ("ADA"), the Family Medical Leave Act (29 U.S.C. § 2601 *et seq.*)

("FMLA"), and the Pennsylvania Human Relations Act (43 PA. C.S. §§ 951-63) ("PHRA") by

terminating her employment on the basis of her disabilities and by denying her reasonable

accommodations and medical leave.  Nutrisystem asserts that it terminated her employment

because she failed to comply with the company's attendance policy.  Nutrisystem now moves for

summary judgment in its favor.  For the reasons that follow, I will grant the motion in part and

deny it in part.

## I.    BACKGROUND[1]

Unless otherwise noted, the following facts are undisputed.  In December 2010, Munoz

began employment with Nutrisystem as a retention representative.  *See* Joint Appendix ("JA") at

A6, A10.  As a retention representative, Munoz would encourage customers to stay with

Nutrisystem and continue receiving shipments of weight-loss products.  *Id.*  Munoz remained in

this position until her termination on January 2, 2012.  JA at A38.

---

[1] Because the joint appendix in this case is not consecutively Bates-stamped, citation to the record is
complicated.  The parties have organized the appendix by lettered sections.  Citation will thus refer to the
appropriate section (by letter) and then to the page number within that section.  Where the pages have no
number and contain reduced-sized deposition transcripts, the citation refers to the deposition page.

### A.  Munoz's Hiring and Training

When Munoz interviewed for her position at Nutrisystem, she met with human relations employee Shalona Douglas.  JA at A6.  During the interview, Munoz explained that she suffered from sleep apnea and had recently had an experimental device implanted in her chest that was intended to alleviate her sleeping problems.  JA at A7.  Munoz gave Douglas a packet that explained her recent surgery and implant.  *Id.*  She also explained that she "would probably have some appointments coming up."  *Id.*  After she was hired, Munoz received an employee handbook that included Nutrisystem's attendance and FMLA policies.  JA at A9; G43, 52.  Though she does not recall discussing the handbook during her training, she signed an acknowledgement that she had received it.  *Id.*, G214.

Nutrisystem's policy, as explained in the handbook, tracks employee attendance in terms of "events:"  When an employee accrues too many attendance events, s/he becomes subject to disciplinary action.  JA at G52-54.  A "scheduled" absence – for which an employee provides forty-eight hours' notice and receives management approval – is not an event.  JA at G53.  An "unscheduled" absence is an event, unless it qualifies for FMLA or Workers' Compensation leave.  *Id.*  A late arrival or early departure counts as half an event; a full-day absence is one event.  JA at G52.  If an employee who has missed work for an illness returns with a doctor's note, however, a multiple-day absence will be deemed one event only.  *Id.*  Events remain on an employee's record for one year.  *Id.*

New employees must complete a three-month introductory period during which they are expected not to accrue any events at all.  JA at G54.  Any unscheduled absence triggers a warning; accrual of four events during this period results in termination.  *Id.*  After completion of the introductory phase, events are calculated over a "backward rolling 12 month period."  JA at

G55.  As an employee accumulates events, there are progressive disciplinary consequences.  *Id.*
After four events, the employee receives coaching and counseling; after five, a verbal warning;
after six, a written warning; and after seven, a final warning.  *Id.*  Accruing eight attendance
events within a rolling twelve-month period results in termination.  *Id.*

In addition to the attendance policy, the Nutrisystem handbook explains the process for
requesting FMLA leave.  JA at G43.

### B.  Munoz's Attendance Prior to August, 2011

After her initial training period, Munoz was supervised by Pamela White.  JA at B11.
White's supervisor was Vidya Mohammed.  JA at B28.  Between January and May 2011, Munoz
accumulated seven attendance events.  JA at G176.  As a result, White issued Munoz several
warnings, including coaching in April and verbal and written warnings in May.  JA at G178.

Three of Munoz's absences over this period were arguably related to her sleep apnea.
First, in January, Munoz arrived late and left early on the same day because she was participating
in a sleep study.  JA at A17, G303.  According to Nutrisystem, she had obtained prior approval
for the late arrival but not the early departure, and so received half an event.  JA at B19-21, 45;
G184, 303.  In March, Munoz received another half-event for leaving work early after she
tripped on a curb and felt pain where her sleep apnea device was implanted.  JA at A19, B48,
G176, 290.  In April, Munoz missed two days of work for the flu and returned with a doctor's
note explaining that the device had complicated her illness.  JA at B72-3, G110.  For that
absence she accrued one event.  JA at G303.  In total, these absences constituted two events.  JA
at G177, 303.

The other five attendance events had no apparent connection to Munoz's sleep apnea.  On
April 21 and May 4, Munoz missed work and provided no explanation.  JA at A20, G293.  The

remaining three events resulted from sickness, car trouble, and Munoz forgetting her key fob.  JA at A20-21, 25; B72; G293, 303.  The chart below summarizes Munoz's attendance events between January and August of 2011:

|  | *Date* | *Event* | *Reason* |
|---|---|---|---|
| Related to Sleep Apnea (2 Events) | Jan. 13-14 | 1/2 | Left early, arrived late – sleep study.  JA at A17; B17, 21, 45. |
|  | March 25 | 1/2 | Left early – tripped on curb, pain near sleep apnea device.  JA at A19, B46, G290. |
|  | April 10-11 | 1 | Out sick; illness complicated by sleep apnea device.  JA at B69, 72; G110, 303. |
|  |  |  |  |
| Unrelated to Sleep Apnea (5 Events) | April 1 | 1 | Out sick.  JA at B72. |
|  | April 4 | 1/2 | Left early – sore throat.  JA at A20, G293. |
|  | April 21 | 1 | No explanation.  JA at A20, B73. |
|  | May 4 | 1 | No explanation.  JA at A20. |
|  | May 13 | 1/2 | Arrived late – forgot key fob.  JA at A21. |
|  | May 23 | 1 | Called out – car in the shop.  JA at A25, G303. |
| **Total:** | | | **7 Events** |

### C.  Munoz's Attendance After August, 2011

On August 7, 2011, Munoz was in a car accident and sustained injuries to her back and neck.  JA at A21, L2.  Her supervisors, White and Mohammed, knew about the car accident and that Munoz was injured.  JA at B26-28, C45.  After learning of the accident, Mohammed contacted Nutrisystem's human relations department to inquire about leave alternatives for Munoz, who did not yet qualify for FMLA.  JA at G109.  Ultimately Nutrisystem granted Munoz a twelve-day personal leave to recover from her injuries.  JA at G103.  The company subsequently extended the leave several times at Munoz's request.  JA at G81, 91, 97.  Munoz returned to work after eight weeks, on October 12, 2011.  JA at A21, B67, F9.

After her return, Nutrisystem provided Munoz with several excused absences.  She did not receive events when attending doctors' appointments, if she provided notice.  JA at B65, G337.  For instance, Nutrisystem authorized a scheduled absence for Munoz to attend a doctor's

appointment on October 30, 2011.[2]  JA at B67, G337.  Munoz also received bereavement leave for December 15, 16, and 18 in order to attend her cousin's funeral in Chicago, although she ultimately did not.  JA at A22-24, G267.[3]

Munoz claims that at some point after returning from personal leave she spoke with White about accommodations for her accident-related injuries.  JA at A41.  She alleges that she requested short breaks, opportunities to stand and stretch, and periodic days off.  *Id.*  White has no recollection of this discussion and there is no documentation of it.  JA at B29.

### D.  Munoz's Illness and Termination

Munoz fell ill at the end of December 2011.  JA at A25.  She left work early on December 26, complaining of flu-like symptoms.  *Id.*  On December 29, she left a voicemail explaining that she was still not feeling well and would bring a note.  JA at A26, G499.  On December 30 she e-mailed White that she was "out iwth[sic] an infection and my neck was out [sic] my doctor didn't want me to go in to work."  JA at F1.  On January 1 she called out again, but said that she would return the next day, and did.  JA at F1, G500.  During this bout of illness, Munoz became eligible for FMLA leave, because as of December 28 she had worked at Nutrisystem for one year.  JA at B33.

The following table lists the attendance events that Munoz accrued during this time:

| Date | Event | Reason |
|------|-------|--------|
| Dec. 26 | 1/2 | Left early – flu-like symptoms.  JA at A25. |
| (Dec. 28 – Eligible for FMLA.  JA at B33.) | | |
| Dec. 29 | 1 | Out sick.  JA at A26, G499. |

---

[2] There is some confusion about this date because Munoz was not actually scheduled to work.  JA at B67.

[3]  Munoz attended a physical therapy appointment in Pennsylvania on the day of the funeral, December 17; according to her testimony, she changed her initial plans and drove home from Chicago early.  JA at A22-24.

| Dec. 30 | 1 | Out sick; e-mail alludes to neck pain and doctor's recommendation.  JA at A26, F1, G500. |
|---|---|---|
| Jan. 1 | 1 | Out sick.  JA at G500. |
| **Total:** | | **3.5 Events** |

On December 30, Nutrisystem began to draw up termination papers for Munoz because she had reached eight attendance events.  JA at C81, G341.  When Munoz returned to work on January 2, White claims that she asked for a doctor's note, did not receive one, and sought no further explanation of Munoz's illness.  JA at B77.  In an e-mail sent that day, White wrote that Munoz had told her that she had suffered from an ear infection.  JA at G345.  White believed that this was "unrelated to the medical issues she was having from the car accident."  *Id*.

Munoz believes that she did provide a doctor's note upon her return, but there is no such note in the record.  JA at A33, 58.  There is a note dated June 28, 2013, in which Munoz's sleep apnea doctor writes that from December 29, 2011 through January 2, 2012, Munoz suffered from "severe neck pain and spasms."  JA at F140.  Munoz never visited this doctor during her December 2011 absence; she does not recall whether she sought treatment from her general practitioner.  JA at A26, 58; F140.  In her deposition, Munoz testified that the severe neck pain she experienced during her illness was related to her lingering injuries from the car accident.  JA at A54.

On January 2, 2012, the day that Munoz returned to work, Nutrisystem terminated her employment.  JA at A38.

### E.  Procedural History

Munoz filed suit against Nutrisystem on July 30, 2013.  *See* ECF Doc. 1.  Her complaint contains three counts alleging violations of the ADA, PHRA and FMLA, respectively.  Because her ADA and PHRA claims are analyzed according to the same legal framework, the complaint essentially presents five substantive claims: (1) ADA/PHRA discrimination, (2) ADA/PHRA

failure to accommodate, (3) ADA/PHRA retaliation, (4) FMLA interference, and (5) FMLA retaliation.[4]  Nutrisystem now moves for summary judgment in its favor.

## II.    JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.  In ruling on a motion for summary judgment, a court must "construe the evidence in the light most favorable" to the non-moving party and grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 176 (3d Cir. 2013); Fed. R. Civ. P. 56(a).  "A 'genuine dispute' exists if a reasonable jury could find for the nonmoving party." *Zimmerman*, 706 F.3d at 176.

## III.    DISCUSSION

### A.    ADA / PHRA Discrimination

Munoz alleges that Nutrisystem terminated her employment on the basis of her disabilities: sleep apnea and her injuries from the car accident.  When there is no direct evidence of discriminatory animus, the *McDonnell Douglas* burden-shifting analysis applies.[5]  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-05 (1973).  The plaintiff must first

---

[4] Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts," which include the ADA.  *Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir. 1996).  The ADA Amendments Act of 2008 ("ADAA") has complicated matters by broadening the ADA's definition of "disability," *see* Pub. L. No. 110–325, § 4, 122 Stat. 3553, 3555-56 (2008) (codified at 42 U.S.C. § 12102), but because Nutrisystem does not dispute Munoz's disability for purposes of this motion, that difference does not affect the analysis in this case.

[5] When there is direct evidence of discrimination, the *McDonell Douglas* test is inapplicable.  *See, e.g.*, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 113, 121 (1985); *Watson v. Se. Pennsylvania Transp. Auth.*, 207 F.3d 207, 215-16 (3d Cir. 2000).  Direct evidence of discrimination requires "conduct or statements" by relevant decision-makers that demonstrate a discriminatory attitude.  *Starceski v. Westinghouse*, 54 F.3d 1089, 1096 (3d Cir. 1995) (citation omitted).  Munoz asserts that there is direct evidence of animus in this case because more than half of her attendance events were related to her disabilities.  She argues that including these as grounds for termination was discriminatory in itself. Because the termination was premised on attendance, however, not on her disabilities directly, Munoz's argument does require an inference of discriminatory animus.

establish a prima facie case by showing that she has a disability, is qualified for the position, and has suffered an adverse employment action as a result of the disability.  *See Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 (3d Cir. 1998) (citing *Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).  The burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse action.  *McDonnell Douglas Corp.*, 411 U.S. at 802.  Finally, the burden returns to the plaintiff to prove that the purported reason was pretext.  *Id.* at 804.  Because Nutrisystem has offered a legitimate reason for Munoz's termination and the record does not support a finding of pretext, I will grant summary judgment in favor of Nutrisystem on this claim.

1. *Prima Facie Case*

For the purposes of summary judgment, it is undisputed that Munoz was disabled from her sleep apnea and car-accident injuries.  At issue is whether she was qualified to serve as a retention representative and whether her disability was the cause of her termination.

An individual is qualified when she possesses the necessary skill, experience, and education for the job, and, with or without reasonable accommodation, "can perform the essential functions of the employment position."  *Deane*, 142 F.3d at 145 (citing 42 U.S.C. § 12111(8)).  "[T]he employer's judgment as to what functions of a job are essential" is entitled to "consideration."  *Id.* at 146.  Nutrisystem has not disputed that Munoz had the necessary training and skill for her position.  It asserts, instead, that attendance is an essential function for retention representatives, whose primary responsibility is to soothe disgruntled customers who call to cancel their orders, and that Munoz was unable to comply with its attendance policy.  The question is therefore whether Munoz could have maintained adequate attendance if she had been provided a reasonable accommodation.

8

The plaintiff, not the employer, bears the burden of demonstrating that a reasonable accommodation existed.  *See Gaul*, 134 F.3d at 580-81; *Shiring v. Runyon*, 90 F.3d 831, 832 (3d Cir. 1996).  An accommodation is reasonable when it does not place a disproportionate burden on the employer.  *Id.*  Other courts in this district have found that allowing excessive absenteeism is not a reasonable accommodation, because it places too large of a burden on the employer.  *See Santiago v. Temple University*, 739 F. Supp. 974, 979 (E.D. Pa. 1990) (finding that plaintiff who unpredictably missed work could not be qualified for his position regardless of the fact that he was absent for health reasons); *see also Smith v. Davis*, 248 F.3d 249, 251 (3d Cir. 2001) (noting in dicta that "an employee who does not come to work on a regular basis is not 'qualified'").[6]

In this case, Munoz argues that Nutrisystem could have allowed her more flexibility in missing periodic workdays for her disability-related health problems, and that such an accommodation would have been reasonable.  She not does provide a specific proposal. Construing the record in the light most favorable to her, however, a jury might find that Nutrisystem could have excused Munoz for absences related to her disabilities, or could have allowed her a few more events a year than employees without disabilities, and that it would not have burdened the company too greatly.  There is thus a genuine dispute of material fact as to whether Munoz was "qualified" for her position.  As to causation, the record – construed most favorably to Munoz – could support a finding that Munoz's disabilities caused at least three of her attendance events and therefore caused her termination.

---

[6] The Third Circuit reversed a grant of summary judgment in *Smith* because, although the defendants cited absenteeism as the reason for the plaintiff's termination, the record suggested that he was actually fired for alcohol use and that the cited basis for his termination might be pretext. *Id.*

2.   *Nutrisystem's Proffered Reason*

The employer's burden to articulate a legitimate, non-discriminatory reason for an adverse employment action is light.  *See McDonnell Douglas Corp*, 411 U.S. at 802-03; *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).  Nutrisystem states that Munoz was fired because she accumulated 10.5 attendance events, which, pursuant to its policy, warranted termination.  Munoz has not directly contested the legitimacy of this proffered reason; she has framed her arguments in terms of pretext instead.  In fact, though, the thrust of her position is that absenteeism is *not* a legitimate basis for termination if it is caused by a disability.  Munoz has provided no legal authority for that position, and I have found none.  On the contrary, a number of courts in this circuit have found the violation of an employer's attendance policy to constitute a legitimate and non-discriminatory basis for termination.  *See, e.g.*, *Meyers v. Conshohocken Catholic School,* No. 03-4693, 2004 WL 3037945, at *9 (E.D. Pa. December 30, 2004); *Veltri v. Thompson Consumer Electronics,* No. 02-0645, 2004 WL 1490522, at *5 (M.D. Pa. May 18, 2004); *Blake v. UPMC Passavant Hosp.*, No. 06-193, 2008 WL 936917 (W.D. Pa. Apr. 4, 2008), *aff'd*, 394 F. App'x 940 (3d Cir. 2010).

3.   *Pretext*

The burden now lies with Munoz to show that Nutrisystem's proffered reason for her termination – the accrual of 10.5 attendance events – is pretextual.  *See McDonnell*, 411 U.S. at 804.  "At this stage, a plaintiff may defeat a motion for summary judgment by either discrediting the defendant's proffered reasons or adducing evidence that discrimination was more likely than not a determinative cause of the adverse action."  *Anderson v. Wachovia Mort. Corp.*, 621 F.3d 261, 271 (3d Cir. 2010) (internal quotation marks and alterations omitted).  There is no evidence in this case from which a jury might conclude that Nutrisystem's proffered reason for

terminating Munoz's employment is pretext.  As noted, Munoz's arguments on this prong

actually contest the legitimacy of Nutrisystem's attendance policy.  None of the evidence she

invokes discredits Nutrisystem's explanation that Munoz was fired because of her attendance

record, or suggests that another reason was the true cause of her termination.  There is no

suggestion that the company treated Munoz differently than other employees or counted her

disability-related absences more heavily.  Because, construing the record in the light most

favorable to Munoz, no reasonable jury could conclude that Nutrisystem's proffered reason for

terminating her employment was pretextual, I will grant summary judgment in favor of

Nutrisystem with respect to Count I.

### B.  ADA / PHRA Failure to Accommodate

An employer also violates the ADA if it does "not mak[e] reasonable accommodations to

the known physical or mental limitations of an otherwise qualified" employee with a disability,

unless it "can demonstrate that the accommodation would impose an undue hardship on the

operation" of its business.  42 U.S.C. § 12112(b)(5)(A).  To prove a failure to accommodate, a

plaintiff must show that

> 1) the employer knew about the employee's disability; 2) the employee requested
> accommodations or assistance for his or her disability; 3) the employer did not
> make a good faith effort to assist the employee in seeking accommodations; and
> 4) the employee could have been reasonably accommodated but for the
> employer's lack of good faith.

*Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319-20 (3d Cir. 1999).  The request "does not

have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable

accommodation,'" but it "nonetheless must make clear that the employee wants assistance for his

or her disability."  *Id.* at 313.

Nutrisystem did know about Munoz's disabilities.  Munoz's supervisor, White, was aware of Munoz's sleep disorder and injuries from the car accident, and received at least one email from Munoz after her return alluding to being in "pain from my therapy."  JA at B17, 26-30; C29, 45; G337.  White's supervisor, Mohammed, also knew that Munoz attended sleep studies and suffered from back and neck problems.  See JA at B26-28; C45, 78.  It is less clear whether Munoz requested accommodations.  Construing the record in the light most favorable to her, a jury could find that she did on the basis of her initial conversation with Shalona Douglas about her sleep apnea and her alleged conversation with White (requesting periodic days off and opportunities to stand and stretch) after her return in October 2011.

When an employee requests accommodations for a disability, an employer, to demonstrate its good faith, must engage in an "interactive process" with the employee to "search for appropriate reasonable accommodation."  *Taylor*, 184 F.3d at 312; *see also Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000); 29 C.F.R. § 1630.2 & App'x to Pt. 1630 (2014).  This "requires the employer to take some initiative."  *Taylor*, 184 F.3d at 315.  If an employee has provided only vague notice of a disability, the employer must seek further information, by, for example, contacting the employee's doctor or meeting with the employee to explore potential accommodations.  *Id.* at 314-17.  Failure to engage in the interactive process can give rise to an inference of bad faith.  *Id.* (citing *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281 (7th Cir. 1996)).

Interpreting the evidence most favorably to Munoz, there is a genuine dispute as to whether Nutrisystem engaged in the interactive process.  Nutrisystem contends that it did accommodate Munoz, by allowing her to attend sleep studies without accruing events, but nothing in the record indicates that this was special treatment.  Furthermore, when Munoz

returned from an eight-week leave of absence after her car accident, Nutrisystem did not initiate a conversation with her about how to support her return, or follow up after Munoz spoke with White.  On the basis of this record, a jury could potentially find that Nutrisystem failed to take the affirmative steps required by the interactive process, and could draw an inference of bad faith.  Finally, as already discussed, a jury could also find that a reasonable accommodation was available and would have allowed Munoz to perform her job.  Summary judgment is therefore inappropriate on this claim.  *Cf. Taylor*, 184 F.3d at 318 (noting that, "when an employee has evidence that the employer did not act in good faith in the interactive process, . . . we will not readily decide on summary judgment that accommodation was not possible").

### C.  ADA/PHRA Retaliation

Munoz's third and final ADA/PHRA claim is that Nutrisystem retaliated against her for requesting reasonable accommodations.  A variation of the *McDonnell Douglas* framework governs ADA retaliation claims.  *See Williams v. Philadelphia Hous. Auth. Police*, 380 F.3d 751, 759 (3d Cir. 2004).  First, the plaintiff must prove a prima facie case by showing that (1) s/he engaged in a protected activity, (2) the employer took an adverse action either after or contemporaneous with the protected activity, and (3) there was a causal connection between the protected activity and the adverse employment action.  *See id.*; *Fogleman v. Mercy Hosp.*, 283 F.3d 561, 567-68 (3d Cir. 2002) (citing *Krouse*, 126 F.3d at 500).  The burden then shifts to the defendant to offer a legitimate reason for the adverse action.  *Krouse*, 126 F.3d at 500.  Finally, the burden returns to the plaintiff to show that the proffered reason was pretext.  *Id.* at 501.  Requesting reasonable accommodations is a protected activity under the ADA, regardless of whether a plaintiff can show that s/he was disabled or qualified for the position.  *See id.* at 502; *Shellenberger v. Summit Bancorp Inc.*, 318 F.3d 183, 189-92 (3d Cir. 2003) ("[T]he right to

request an accommodation in good faith is no less a guarantee under the ADA than the right to file a complaint with the EEOC.").

Munoz alleges that she engaged in a protected activity when she requested permission to attend sleep studies; when she asked White for periodic days off after returning from her personal leave; and when she "requested and took time off" for problems relating to her disabilities on January 14, March 25, April 10-11, December 29-30 and January 1.  For purposes of summary judgment only, Nutrisystem concedes that Munoz's alleged request for accommodations after returning from personal leave was a protected activity.  Her request to attend sleep studies also qualifies for protection.  No reasonable jury, however, could view Munoz's "call outs" in December and January as requests for accommodations.  The only information that Munoz relayed to Nutrisystem on December 26 was that she was out with flu-like symptoms.  It was not until December 30 that she mentioned neck pain, and even that communication was, at best, a vague allusion to ongoing injuries, not a request for disability accommodations.  *Cf. Taylor*, 184 F.3d at 313 (noting that an accommodations request must clearly express the employee's desire for help with a disability); *Jones*, 214 F.3d at 408 (same).  Munoz's latest protected activity was, therefore, the alleged conversation with White sometime shortly after her return in October 2011.

Given this chronology, the record does not support a finding that there was any causal connection between Munoz's protected activity and her termination.  She was fired approximately two months after her alleged conversation with White; that timing does not suggest retaliation.  *Cf. Shellenberger*, 318 F.3d at 190 (noting that "unusually suggestive" timing can establish causal link between protected activity and alleged retaliation); *Williams*, 380 F.3d at 760 (holding that space of two months between protected activity and alleged retaliation

did not suggest causation, in contrast to two-day gap in *Jalil v. Avdel Corp*, 873 F.3d 701, 709

(3d Cir. 1989)).  There is no evidence that Munoz's requests for accommodations met with

hostility or triggered any negative change in her experience at Nutrisystem.  In sum, there is no

basis for a jury to conclude that Munoz's (arguable) requests for accommodations were the cause

of her termination.  Furthermore, even if there were, Nutrisystem has articulated a legitimate

basis for the termination and, as already discussed, the record does not support a finding of

pretext.  I will therefore grant summary judgment for Nutrisystem on this claim.

### D.  FMLA Interference

Munoz alleges that Nutrisystem violated the FMLA by counting her absences on

December 29, December 30 and January 1 against her, instead of excusing them as FMLA leave.

The Third Circuit has recently clarified that, to prevail on a claim of FMLA interference, a

plaintiff must show that:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an
> employer subject to the FMLA's requirements; (3) the plaintiff was entitled to
> FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention
> to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she
> was entitled under the FMLA.

*Ross v. Gilhuly*, 13-2437, --- F.3d ---, 2014 WL 2724128, at *5 (3d Cir. June 17, 2014).  It is

uncontested that Nutrisystem is an employer subject to the FMLA and that Munoz became

eligible for FMLA leave on December 28, 2011.  The questions at issue are whether Munoz was

entitled to FMLA for her winter absences and whether she gave Nutrisystem notice of her

intention to take such leave.

Eligible employees are entitled to FMLA leave for a "serious health condition," defined

as "an illness, injury, impairment or physical or mental condition that involves inpatient care . . .

or continuing treatment by a health care provider."  29 U.S.C. § 2612 (2009); 29 C.F.R. §

825.113(a).  This includes "any period of incapacity or treatment" due to a chronic condition that

requires periodic visits to a healthcare provider, continues over "an extended period of time," and may cause "episodic" incapacity. 29 C.F.R. § 824.115 (defining "continuing treatment"). Physical therapy can constitute continuing treatment, *see, e.g.*, *Koller v. Riley Riper Holling and Colagreco*, 850 F. Supp. 2d 502, 511 (E.D. Pa. 2012), and there is no precise durational requirement for a chronic condition. *See Deborah Hansler v. Lehigh Valley Health Network*, No. 13-cv-03924, 2014 WL 1281132, at *9 (E.D. Pa. March 28, 2014) (surveying conditions deemed "chronic"); *Pinson v. Berkley Med. Res. Inc.*, No. 03-1255, 2005 WL 3210950, at *16 (W.D. Pa. June 21, 2005) (holding that jury could find a back problem that lasted eighteen months to be chronic). "Ordinarily, unless complications arise, the common cold, the flu, [and] ear aches . . . do not meet the definition of a serious health condition and do not qualify for FMLA leave." 29 C.F.R. § 825.113(d).

Munoz contends that her back and neck injuries resulting from the accident qualified as a chronic, serious health condition. Construing the record in her favor and giving her the benefit of every reasonable inference, it is conceivable that a jury could agree. After her accident Munoz continued to attend physical therapy, *see* JA at A41, and she was allegedly incapacitated by related neck spasms during her winter illness nearly five months later. It may be difficult for Munoz to convince a jury not only that she had a "serious health condition" but also that it was the reason for her absence, given the conflicting evidence and dearth of contemporaneous medical documentation. Nonetheless, at this stage there is a genuine dispute with respect to these facts.

Whether Munoz provided adequate notice is also disputed. To trigger an entitlement to FMLA leave, an employee must "provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration

16

of the leave," but "need not expressly assert rights under the FMLA or even mention the FMLA." *Saranowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007).  The Third Circuit has suggested that notice is sufficient if it communicates that an employee "may need FMLA leave." *Id.* at 403 (quoting, with approval, *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005)).  In assessing whether an employee has given adequate notice, "[t]he critical question is how the information conveyed to the employer is reasonably interpreted." *Id.* at 402.  This "is generally a question of fact, not law." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 303 (3d Cir. 2012).

Munoz's email message, alluding to her neck being "out" and her doctor's recommendation that she stay home, is, at most, an elliptical reference to her alleged chronic condition, especially in light of her messages to Nutrisystem on December 26 and 29, which mentioned only her flu-like symptoms.  It is far from clear, moreover, that the neck problem was the real reason for Munoz's absence.  Nonetheless, construing the record in her favor once again, a jury could possibly conclude that her December 30 email was sufficient to put Nutrisystem on notice that Munoz might need FMLA-qualifying leave.  Were it to reach that conclusion, it could also find that Nutrisystem failed to determine whether the leave did qualify for FMLA protection, and ultimately denied Munoz FMLA leave to which she was entitled.  I will therefore deny summary judgment on this claim.

### E.  FMLA Retaliation

Munoz's final claim alleges that Nutrisystem terminated her employment in retaliation for requesting FMLA leave.  Because this claim requires a showing of retaliatory intent, the *McDonnell Douglas* framework applies unless there is direct evidence of animus.  *See Lichtenstein*, 691 F.3d at 302.  First, the plaintiff must make out a prima facie case that "(1) she

invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Id.*  The employer must then offer an alternative legitimate reason for the adverse action; if it does, the burden shifts back to the plaintiff to prove that the proffered reason is pretextual.  *Id.* at 309.

Assuming *arguendo* that the record supports a prima facie case of FMLA retaliation, the claim still falters:  Nutrisystem has proffered a legitimate reason for Munoz's termination (violation of its attendance policy), and, as discussed above, there is no evidence in the record that this explanation is a pretext.  The retaliation claim is especially implausible in the FMLA context, because the record shows that Nutrisystem management actively considered offering Munoz FMLA leave after her car accident; when it determined that she was ineligible, it instead provided an eight-week personal leave.  Because no reasonable juror could find that Nutrisystem retaliated against Munoz's (alleged) request for FMLA leave, Nutrisystem is entitled to judgment on this claim as a matter of law.

## IV.    CONCLUSION

For the foregoing reasons, I will grant the defendants' motion for summary judgment with respect to Munoz's ADA/PHRA discrimination, ADA/PHRA retaliation, and FMLA retaliation claims.  I will deny the motion with respect to the ADA failure-to-accommodate and FMLA interference claims. An implementing order follows.